UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JAMES PREIMESBERGER,**<br><br>**Plaintiff**<br><br>v.<br><br>**UNITED STATES,**<br><br>**Defendant** | CASE NO. 1:19-CV-1441 AWI SAB<br><br>ORDER ON DEFENDANT'S MOTION TO DISMISS<br><br>(Doc. No. 7) |

    This is a tax refund case filed by Plaintiff James Preimesberger ("Preimesberger") against the United States. Specifically, Preimesberger seeks to recover $6,601.41 that he alleges was improperly assessed against him through the Internal Revenue Service's ("IRS") invocation of 26 U.S.C. § 6672 ("§ 6672"). The United States has responded to the Complaint through the IRS, and the IRS now moves to dismiss the Complaint under Rule 12(b)(6). For the reasons that follow, the motion will be denied in part and granted in part.

## **RULE 12(b)((6) FRAMEWORK**

    Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. See Mollett v. Netflix, Inc., 795 F.3d 1062, 1065 (9th Cir. 2015). In reviewing a complaint under Rule 12(b)(6), all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party, and all reasonable inferences are made in the non-moving party's favor. United States ex. rel. Silingo v. Wellpoint, Inc., 904 F.3d 667, 676 (9th Cir. 2018). However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the

elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Johnson v. Federal Home Loan Mortg. Corp., 793 F.3d 1005, 1008 (9th Cir. 2015). The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint, or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013). To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678; Mollett, 795 F.3d at 1065. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). "Plausibility" means "more than a sheer possibility," but less than a probability, and facts that are "merely consistent" with liability fall short of "plausibility." Iqbal, 556 U.S. at 678; Somers, 729 F.3d at 960. The Ninth Circuit has distilled the following principles for Rule 12(b)(6) motions: (1) to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively; (2) the factual allegations that are taken as true must plausibly suggest entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation. Levitt v. Yelp! Inc., 765 F.3d 1123, 1135 (9th Cir. 2014). If a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made . . . ." Ebner v. Fresh, Inc., 838 F.3d 958, 962 (9th Cir. 2016). However, leave to amend need not be granted if amendment would be futile or the plaintiff has failed to cure deficiencies despite repeated opportunities. Garmon v. County of L.A., 828 F.3d 837, 842 (9th Cir. 2016).

## BACKGROUND

As relevant to the tax periods at issue, Meridian Health Services Holdings, Inc. ("Meridian") owned and operated five skilled nursing home facilities in California ("the

Facilities"). Preimesberger owned less than 10% of Meridian's stock and was employed by each of the Facilities to operate their skilled nursing activities.

The overwhelming majority of each Facility's revenues were derived from patients covered by Medicare and/or Medi-Cal, which meant that each Facility's cashflow was dependent on timely reimbursement payments from Medicare and Medi-Cal. Beginning in 2010 and worsening over time through 2015, the Facilities experienced serious cashflow problems primarily as a result of delays and disruptions in Medicare and Medi-Cal reimbursement payments. From 2010 through 2015, the Facilities accrued substantial Medicare and Medi-Cal receivables due from the United States. However, eventually the cashflow problem became so acute that the Facilities could not meet all of their operational expenses.

Initially, Preimesberger caused Meridian to bridge each Facility's cashflow gap by drawing on a line of credit from Capital Finance, Inc. ("CFI"). Every time Meridian drew on the line of credit, Meridian was required to provide CFI with the nature and amount of each Facility's obligations for which funds were requested. Meridian requested that the funds be used to pay all of the wages of the Facility's employees, i.e. net wages and withholding taxes, but CFI only authorized and provided funds for the payment of net wages. As a result, the Facilities were unable to pay all or a portion of their withholding tax obligations.

Unlike a typical business, the Facilities could not simply cease operations when they could no longer pay their employees' net wages and the necessary withholding taxes. Under state and federal regulations, nursing homes/skilled nursing facilities must follow what Preimesberger describes as a lengthy and detailed procedure for closure that includes notification to the residents of the Facilities and appropriate governmental agencies and transferring residents to other appropriate care facilities. In the interim, a nursing home/skilled nursing facility is required to remain open and maintain the existing standard of care for all residents. Failure to follows these regulations are punishable through civil and criminal penalties.

Preimesberger alleges that as a result of the applicable regulations, each Facility was required to first apply funds that were necessary to maintain the appropriate standard of care for each Facility's residents. Of necessity, this meant that property rent, utility bills, and payment of

1  wages to employees all had to be paid.  Because of the backlog of Medicare and Medi-Cal
2  payments, as well as the restrictions placed on funds provided by CFI, the Facilities could only
3  pay their employees net wages and not the withholding taxes.  Preimesberger alleges that it was
4  not possible for the Facilities to meet both their withholding obligations and their regulatory
5  obligations to remain open and maintain the standard of care.

6       Aware of this untenable situation, Preimesberger negotiated the sale of the Facilities to
7  Providence Health Group ("Providence").  Providence agreed to close the sale no later than
8  November 1, 2014 and agreed to satisfy each of the Facility's outstanding withholding tax liability
9  through Medicare and Medi-Cal receivables.  However, the sale did not close until March 1, 2015,
10 and, contrary to its promise, Providence did not satisfy the outstanding withholding tax liabilities.

11      Pursuant to § 6672, the IRS has assessed Preimesberger with penalties regarding each of
12 the Facility's unpaid withholding tax liabilities for the tax periods ending June 30, 2014,
13 September 30, 2014, December 31, 2014, March 31, 2015, and June 30, 2015.  On information
14 and belief, the total amount assessed is not less than $2.4 million.

15      On April 10, 2019, Preimesberger made a series of payments totaling $6,601.41 with
16 respect to the assessments against him.  Preimesberger also believes that the IRS has collected
17 additional amounts from him through other means.  The same day, Preimesberger made a request
18 to the IRS for a refund of the various amounts that he had paid pursuant to the § 6672 assessment.
19 Following the expiration of six months, the IRS made no decision regarding Preimesberger's
20 refund request.

21
22                                           **DEFEENDANT'S MOTION**
23    *Defendant's Argument*

24      The IRS explains that employers are required to withhold social security and individual
25 taxes from an employee's wages.  The employer pays the withheld taxes on a quarterly basis, even
26 though withholdings occur each pay period.  The employer holds the withheld taxes in trust for the
27 United States and the taxes are known as "trust fund taxes."  Once an employee receives net pay,
28 the employee is credited with the tax payments, irrespective of whether the employer actually pays

the trust fund taxes to the IRS.  Section 6672 permits the IRS to assess trust fund tax penalties against a responsible person for an amount up to the delinquent trust fund taxes.  Trust fund taxes can be assessed against a "responsible person" who "willfully failed" to pay the trust fund taxes.  The Complaint does not dispute that Preimesberger is a "responsible party," rather, the Complaint contends that Preimesberger's conduct was not "willful."  However, the Complaint's theories have either previously been or should be rejected.  First, willful conduct is conduct that is voluntary, conscious, and intentional, and in the context of § 6672, the Ninth Circuit rejects arguments that have the effect of a taxpayer "preferring" other creditors over the United States.  The Complaint shows that Preimesberger preferred utility companies, employees, and landlords over the United States.  Even if the only funds available were for the payment of net wages, paying those wages was still willful.  Second, Preimesberger cites no authority that state and federal regulations would excuse the failure to pay trust fund taxes.  Courts have rejected arguments that conduct was not willful in the nursing home context when taxpayers argued that they had to pay other expenses instead of the trust fund taxes in order to keep the nursing home operational.  Otherwise, the United States would become an unwilling business partner by permitting the Facilities to pile up delinquent trust fund taxes.  Third, Preimesberger's theories would cause great loss to the United States because the IRS would be prevented from collecting through § 6672 until a business ceases doing business.  Fourth, Preimesberger is improperly attempting to shift blame to others, namely Medicare and Medi-Cal, and ignoring the Facilities' inadequate cash flow problem.  Fifth, the Complaint contends that the Facilities do not owe the United States money because, on a net basis, more receivables are owed from slow Medicare payments.  However, there is no law that requires the IRS to undertake the impossible task of determining whether other federal agencies owe a business/taxpayer more than the taxpayer owes in tax fund liability.  Finally, even if Providence agreed to pay the trust fund taxes, that does not preclude the IRS from utilizing § 6672 against Preimesberger.

    In reply, the IRS argues *inter alia* that Preimesberger's equitable estoppel argument is not plausible.  The Court does not have jurisdiction to consider equitable estoppel because it was not raised in Preimesberger's refund claim.  Further, the Complaint does not adequately meet the

substantive elements of estoppel. The Complaint identifies no affirmative misconduct by the IRS, and courts reject broad attempts to estop the United States in tax cases. Finally, the IRS argues that Preimesberger's setoff theory is not plausible because there is no mutuality of debts between the IRS and Preimesberger.

*Plaintiff's Opposition*

Preimesberger argues that the Complaint plausibly alleges why the IRS's § 6672 assessment was improper. First, the assessment of any tax penalty or debt was erroneous because, at the time Preimesberger left the Facilities, the United States was a net debtor to the Facilities due to the Medicare receivables. The United States is a unitary entity, and debts owed to or by one agency are debts owed to the United States. Thus, debts owed by one agency of the United States may be "set off" against a debt owed to a different agency. Second, Preimesberger argues that he did not act willfully because his actions were involuntary. Preimesberger argues that he was compelled by federal and state regulations to keep the Facilities open and maintain the standard of care, which necessitated the paying of others instead of the trust fund taxes. The IRS ignores these regulations, reiterates a general maxim that other creditors may not be preferred over the Untied States, and implicitly argues that Preimesberger should have ignored those regulations. Third, Preimesberger argues that his actions were involuntary because he did not have discretion over how to spend CFI's funds. The IRS improperly ignores the allegation that CFI controlled the manner in which the loaned funds could be used. Finally, the United States is estopped from asserting that Preimesberger acted willfully because it simultaneously caused the Facilities' cash flow problems through untimely Medicare payments, yet, through federal regulations implemented by the Department of Health and Human Services ("HHS"), required the Facilities to stay open and maintain the existing standard of care.

*Legal Standard*

Employers are required to withhold federal income and social security taxes from the wages of their employees. Buffalow v. United States, 109 F.3d 570, 572 (9th Cir. 1997); Klotz v. United States, 602 F.2d 920, 923 (9th Cir. 1979). The withheld taxes are held by the employer in a trust fund for the United States and paid to the United States quarterly. See Buffalow, 109 F.3d

at 572; see also Klotz, 602 F.2d at 923.  The withheld taxes, known as "trust fund taxes," are credited to the employee, even if the employer never remits the trust fund taxes to the United States.  See Buffalow, 109 F.3d at 572-73; Klotz, 602 F.2d at 923.  One of the tools available to the United States to ensure the payment of trust fund taxes is § 6672.  Purcell v. United States, 1 F.3d 932, 936 (9th Cir. 1993); Klotz, 602 F.2d at 923.  Section 6672 provides in relevant part:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a).  Section § 6672 is a penalty against a responsible person that creates "an obligation, separate and distinct from the underlying tax obligation." In re J.J. Re-Bar Corp., 644 F.3d 952, 957 (9th Cir. 2011). To impose liability against a party under § 6672, two requirements must be met:  (1) the party must have been a "responsible person," that is, one required to collect, truthfully account for, and pay over the tax, and (2) the party must have "willfully" failed to pay the tax.  Nakano v. United States, 742 F.3d 1208, 1211 (9th Cir. 2014); Rykoff v. United States, 40 F.3d 305, 307 (9th Cir. 1994).  "Willfulness, within the meaning of § 6672, has been defined as a voluntary, conscious and intentional act to prefer other creditors over the United States." Nakano, 742 F.3d at 1211; Rykoff, 40 F.3d at 307; Klotz, 602 F.2d at 923.  Neither an evil motive nor an intent to defraud the United States is necessary to demonstrate "willfulness."  Rykoff, 40 F.3d at 307; Klotz, 602 F.2d at 923.  A failure to use "encumbered funds" to pay trust fund taxes, however, will not support a finding of willfulness.  See Nakano, 742 F.3d at 1211-12; Purcell v. United States, 1 F.3d 932, 938 (9th Cir. 1993).  Funds are "encumbered" "only where the taxpayer is legally obligated to use the funds for a purpose other than satisfying the preexisting employment tax liability and if that legal obligation is superior to the interest of the IRS in the funds." Nakano, 742 F.3d at 1212.  Generally, whether a party acted "willfully" for purposes of § 6672 is a question of fact. Rykoff, 40 F.3d at 307; Klotz, 602 F.2d at 923; Teel v. United States, 529 F.2d 903, 905 (9th Cir. 1976).  A party challenging liability under § 6672 has the burden of demonstrating that his conduct was not willfully done.  Rykoff, 40 F.3d at 307.

*Discussion*

The Complaint appears to raise three general defenses to the § 6672 penalties: no willful conduct, setoff, and equitable estoppel. The Court will discuss each theory separately.

1. <u>Willfulness</u>

The Court is required to view the allegations in the light most favorable to Preimesberger and make all reasonable inferences in his favor. See <u>Silingo</u>, 904 F.3d at 676. So viewing the allegations, the Court finds that the Complaint plausibly indicates that Preimesberger did not act "willfully" when he did not pay the trust fund taxes. In essence, the Complaint alleges that Preimesberger could not simply cease operations when the cashflow situation reached its pinnacle. Instead, federal and state regulations required Preimesberger to keep the Facilities operating at the existing standard of care.[1] To accomplish this, Preimesberger had to utilize a line of credit from CFI. The line of credit permitted the Facilities to maintain the standard of care by paying employees, utilities (which powered necessary medical and therapeutic equipment), and landlords. Although Preimesberger attempted to obtain funds from CFI that would cover the withholding taxes, CFI refused to release funds for that purpose. Given the allegations regarding the Facilities' dire cashflow situation and the allegations that Preimesberger attempted to meet the various competing legal obligations (pay trust fund taxes and maintain the standard of care), the Court will infer that Preimesberger had no other viable funding options other than CFI's line of credit. That is, the only way that Preimesberger could meet his mandatory regulatory obligations, which carried with them civil and criminal penalties for their violation, was to follow the restrictions of CFI.[2] Additionally, the allegations indicate that the money that was received from CFI was used

---

[1] The IRS does not address the substance of any of the federal and state regulations at issue and does not challenge Preimesberger's assertion that those regulations required him to keep the Facilities operating at the existing standard of care. Therefore, the Court accepts Preimesberger's characterization of the federal and state regulations at issue.

[2] Courts generally find that following restrictions placed on a loan by a third party lender makes a taxpayer's conduct willful, even though the taxpayer may face a breach of contract lawsuit and even if the business will not be able to stay open. E.g. <u>Bell v. United States</u>, 355 F.3d 387 (6th Cir. 2004); <u>Williams v. United States</u>, 931 F.2d 805 (11th Cir. 1991); <u>Davis v. United States</u>, 2018 U.S. Dist. LEXIS 36357 (D. Col. Mar. 6, 2018). Without more from the parties, at this time, the Court finds that the regulations that compelled Preimesberger to continue running the Facilities at the existing standard of care make these cases distinguishable. The Complaint indicates that the Facilities had to utilize the line of credit on several occasions in order to maintain the standard of care. If the Facilities did not follow CFI's restrictions, presumably they would not have had access to future funds and thus, would not be able to meet their regulatory obligations that required them to stay open and maintain the standard of care.

8

to pay expenses/creditors that were necessary to maintaining the existing standard of care. There are no allegations that the Facilities used CFI's funds to pay expenses that were not necessary to maintaining the standard of care. Apart from the restrictions imposed by CFI, federal and state regulation appear to have *de facto* required that CFI's loan be spent to maintain the standard of care, which could arguably make the funds expended "encumbered." Cf. Nakano, 742 F.3d at 1211. Under these circumstances, Preimesberger's actions may be considered involuntary and thus, not willful. The issue of willfulness is generally a question of fact. See Rykoff, 40 F.3d at 307. The factual allegations in the Complaint are not so clear that the Court can hold that Preimesberger's actions were "willful" as a matter of law.

The IRS relies heavily on *Sorenson*. In that case, the Ninth Circuit confronted a corporate officer of a cabinet making company who, in order to stay in business, could only pay net wages to employees. See Sorenson, 521 F.2d at 326-27. The Ninth Circuit recognized that employees were merely one species of creditor, and because the officer elected to pay the employees, he had engaged in willful conduct by preferring those creditors over the United States. See id. at 328. Thus, while the officer's conduct did not have an evil motive and was perfectly understandable, it nevertheless was willful under § 6672. See id. at 328-29. *Sorenson*, however, is distinguishable. To be sure, there is no doubt that Preimesberger permitted net wages to be paid to the Facilities' employees and thus, preferred other creditors over the United States. However, Preimesberger did so in order to comply with competing federal and state regulations. He did not simply choose to keep the Facilities going because he wanted the Facilities to remain in business, rather he did so in order to comply with federal and state regulations that carried both civil and criminal penalties. Neither *Sorenson* nor any case cited by the IRS involve a fact pattern in which a responsible person was attempting to comply with mandatory regulations that required a business to remain open and provide the existing standard of care to its patrons/residents.

The IRS also contends that Preimesberger's argument essentially makes the United States an involuntary business partner with the Facilities. To be sure, courts reject arguments that effectively turn the United States into an "unwilling partner" or "joint venturer" with a company by foregoing collectible tax dollars until the company has sufficiently recovered. Davis v. United

States, 961 F.2d 867, 877-78 (9th Cir. 1992). Again, however, *Davis* did not involve a situation like the one in this case: a corporate officer attempting to comply with mandatory federal and state regulation that required him to keep operating the Facilities at the existing standard of care. The existence of the regulations in the particular context of this case arguably indicate that the United States is not necessarily an unwilling business party because it was those federal regulations the prevented Preimesberger from simply closing the Facilities. Given the arguments made by the parties, the Court cannot hold at this time that the rule recognized in *Davis* defeats Preimesberger's claims as a matter of law.

Finally, the IRS contends that Preimesberger cites no cases in which other regulations excuse the payment of trust fund taxes. That is true. However, the IRS cites no cases that reject attempted compliance with mandatory regulations in relation to "willfulness" under § 6672.[3] As indicated above, the issue of "willfulness" is a factual question. See Rykoff, 40 F.3d at 307. As a factual question, there are any number of circumstances and factors that may render conduct "non-willful." It is unclear why mandatory regulations, particularly federal regulations, cannot be considered in assessing "willfulness."[4]

In sum, the allegations plausibly indicate that Preimesberger's conduct with respect to trust fund taxes was not willful. Therefore, dismissal is not appropriate.

2.      Equitable Estoppel

A party asserting equitable estoppel against the United States has the burden of

---

[3] The Court notes that the IRS cites *United States v. Easterday*, 539 F.3d 1176 (9th Cir. 2008) in another part of its motion. *Easterday* was a criminal case that involved a responsible party's payment of expenses other than trust fund taxes to keep a nursing open and functioning. Easterday, 539 F.3d at 1177-78. However, there is no indication that the defendant's actions were based on attempted compliance with mandatory regulations. Without the issue of the effect of mandatory regulations (particularly those that require staying open and maintaining the standard care) even being mentioned let alone discussed, *Easterday* is distinguishable for the same reason that *Sorenson* is distinguishable.

[4] The IRS argues that accepting Preimesberger's argument could apply to all industries in which federal and state law might impact when and how a business winds up its affairs. However, the IRS does not cite any particular regulation or law, it merely makes a generalized statement. The Court is not holding that every conceivable law and regulation that might apply to how a business winds up will be relevant to or actually defat a "willfulness" analysis under § 6672. The Court is merely reviewing the allegations in this case. Those federal and state regulations prevent nursing homes/skilled nursing facilities from simply closing their doors. Instead, the regulations impose a process to be followed, require that the existing standard of care be maintained, and impose criminal and civil penalties for any violations. The IRS does not present a detailed argument that explains why such regulations should not be considered or why they cannot materially affect a "willfulness" determination under § 6672.

establishing three preliminary elements:  (1) the United States engaged in affirmative misconduct going beyond mere negligence; (2) the United States' wrongful acts will cause a serious injustice; and (3) the public's interest will not suffer undue damage by imposition of estoppel.  See Baccei v. United States, 632 F.3d 1140, 1147 (9th Cir. 2011); Watkins v. United States Army, 875 F.2d 699, 707 (9th Cir. 1989).  There is no single test for "affirmative misconduct."  See Watkins, 875 F.2d at 707.  However, some form of affirmative misrepresentation or affirmative concealment of a material fact, such as a deliberate lie or a pattern of false promises, is required, although no intent to deceive is necessary.  See Baccei, 632 F.3d at 1147; Watkins, 875 F.2d at 707.  Once a party establishes these preliminary elements, the party also has the burden of establishing the four traditional elements of equitable estoppel.[5]  See Watkins, 875 F.2d at 707.

There are at least two critical flaws with Preimesberger's estoppel theory.  First, a taxpayer cannot recover in a suit for a refund "on a different ground than set forth in the claim for refund." Quarty v. United States, 170 F.3d 961, 972 (9th Cir. 1999).  In particular, a taxpayer must "set forth in detail each ground upon which a . . . refund is claim and facts sufficient to apprise the Commissioner of the exact basis thereof."  26 C.F.R. § 301.6402-2(b)(1).  This regulatory requirement is jurisdictional.  See Quarty, 170 F.3d at 972; Boyd v. United States, 762 F.2d 1369, 1371 (9th Cir. 1985).  The taxpayer is not required to provide detailed explanations of his legal theories or provide a full factual background, but the IRS is entitled to take the refund claim at face value.  Boyd, 762 F.2d at 1371.  "If the [refund] claim on its face does not call for investigation of a question, the taxpayer may not later raise that question in a refund suit."  Quarty, 170 F.3d at 972; Boyd, 762 F.2d at 1371.  Here, the Court has reviewed the specific pages of the refund claim that Preimesberger contends provided the IRS with notice of his estoppel theory. The pages provide a general background of the Facilities' financial situation and the cashflow problems caused by the tardy Medicare payments.  See Complaint Ex. C at ECF pp. 23-24.  The pages then expressly state that Preimesberger did not act willfully (and then explain why through

---

[5] The four traditional elements of equitable estoppel are:  "(1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury."  Baccei, 632 F.3d at 1147.

11

1  two subparagraphs), that the doctrine of "recoupment/set off" applies, and that trust fund taxes
2  were to be paid by Providence. See id. at ECF pp. 24-25.  Absent from the pages cited is the word
3  "estoppel," the phrase "equitable estoppel," or any words to the effect that the United States
4  should not be permitted or should be unable to assert a § 6672 penalty because of the combined
5  effect of HHS regulations and tardy Medicare payments.  The other theories pursued by
6  Preimesberger in this lawsuit appear to be clearly and expressly stated.  That is in sharp contrast to
7  his estoppel theory.  Since Preimesberger's estoppel theory is not apparent to the Court from the
8  cited pages, the Court cannot hold that the theory would be apparent to a reasonable IRS
9  employee.  Cf. Synergy Staffing, Inc. v. United States IRS, 323 F.3d 1157, 1161 (9th Cir. 2003)
10 ("A reasonable IRS employee reading this document would know that the taxpayer was griping, at
11 least in part, about the way the payments had been applied.  It was there, in black and white, in its
12 own paragraph, for anyone to read.").  Because the equitable estoppel theory was not sufficiently
13 raised in Preimesberger's refund claim, there is no jurisdiction for Preimesberger to raise that
14 theory in this case.  See Quarty, 170 F.3d at 972; Boyd, 762 F.2d at 1371.

15          Second, even if the Court were to conclude that the equitable estoppel theory is fairly
16 identified within Preimesberger's refund claim, there is an insufficient indication of "affirmative
17 misconduct."  Preimesberger argues that the United States engaged in "affirmative misconduct"
18 because on the one hand, it promulgated regulations that required the Facilities to stay open and
19 maintain the existing standard of care, but on the other hand, it failed to timely process and pay
20 substantial Medicare receivables which caused the Facilities to experience a critical cashflow
21 shortage.  See Opposition at 21:9-13.  According to Preimesberger, but for the untimely Medicare
22 payments, the facilities would have never had a cashflow problem, and but for the HHS
23 regulations, the Facilities could have transferred its patients and closed before accruing any unpaid
24 trust fund taxes.  Id. at 21:13-18.  However, absent from Preimesberger's argument is an
25 identification of any "affirmative misrepresentation or affirmative concealment" by the United
26 States.  See Baccei, 632 F.3d at 1147; Watkins, 875 F.2d at 707.  Preimesberger merely identifies
27 existing regulatory obligations and the source of the Facilities' cashflow problem.  Preimesberger
28 identifies nothing that resembles a lie or a pattern of false promises or any kind of concealment

whatsoever. See Baccei, 632 F.3d at 1147. Preimesberger cites no cases in which "affirmative misconduct" by the United States has been found in similar circumstances, or that excuses the requirement that the "affirmative misconduct" be some form of misrepresentation or concealment. The Court cannot hold that a pre-existing and lawful regulation, combined with tardy or negligent Medicare reimbursement, is sufficient to demonstrate "affirmative misconduct" for purposes of equitable estoppel. In the absence of "affirmative misconduct," Preimesberger's equitable estoppel claim fails. See id.; Watkins, 875 F.2d at 707.

In sum, Preimesberger's equitable estoppel theory suffers from jurisdictional and substantive flaws. Because it does not appear that Preimesberger can cure these flaws, dismissal of any refund claim based on equitable estoppel without leave to amend is appropriate.

3. Setoff

"The right of setoff (also call 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the 'absurdity of A pay B when B owes A.'" Citizens Bank of Md. v. Strumpf, 516 U.S. 16, 18 (1995); Newberry Corp. v. Fireman's Fund Ins. Co., 95 F.3d 1392, 1398 (9th Cir. 1996). Debts are "mutual" when they are owed by the same parties in the same capacities. See Deflora Lake Dev. Assocs. v. Hyde Park, 689 F. App'x 99, 100 (2d Cir. 2017); In re Visiting Home Servs., Inc., 643 F.2d 1356, 1360 (9th Cir. 1981); Coffman v. Cobra Mfg. Co., 242 F.2d 754, 757 (9th Cir. 1954). The doctrine of "setoff" can be applied in cases involving the United States, and the United States and all of its various agencies (including the IRS) is considered a unitary entity. See Cherry Cotton Mills v. United States, 327 U.S. 536, 539 (1946); In re Hal, Inc., 122 F.3d 851, 852-54 (9th Cir. 1997); Turner v. Small Bus. Admin., 84 F.3d 1294, 1296 (10th Cir. 1996). In theory, this means that an individual may set off a debt that he owes to one agency of the United States with the debt that another agency of the United States owes the individual, and vice versa.

In this case, there are two debts owed to the United States. The Facilities or Meridian owe trust fund taxes, and Preimesberger owes § 6672 penalties. The § 6672 penalty is independent of the trust fund taxes, and it is Preimesberger, not the Facilities or Meridian, who is the obligor on those penalties. See In re J.J. Re-Bar, 644 F.3d at 957. While there are two debts owed to the

United States (through the IRS), there is only one debt owed by the United States. The United States (through the HHS) allegedly owes Medicare payments to the Facilities or Meridian. The Medicare payments are not owed to Preimesberger. Therefore, while there may be mutual obligations between the United States and the Faculties/Meridian, there are no mutual obligations between the United States and Preimesberger. The Court is unaware of a setoff case in which a person was permitted to rely on a debt that was not actually owed to that person. Preimesberger cites no authority that would permit him to assert or rely on the Medicare payments owed to the Faculties/Meridian to support some form of setoff. Because there is no mutuality, dismissal of Preimesberger's setoff claims without leave to amend is appropriate.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's Rule 12(b)(6) motion to dismiss is GRANTED with respect to refund claims based on equitable estoppel or setoff, and those claims are DISMISSED WITHOUT LEAVE TO AMEND;
2. Defendant's Rule 12(b)(6) is otherwise DENIED;
3. Within fourteen (14) days of service of this order, the United States shall file an answer; and
4. Following the filing of an answer by the United States, the parties shall contact the Magistrate Judge for the purpose of setting a scheduling conference.

IT IS SO ORDERED.

Dated:   August 5, 2020                                                    
                                            SENIOR  DISTRICT  JUDGE