# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES R. PREIMESBERGER,<br><br>     Plaintiff,<br><br>  v.<br><br>UNITED STATES OF AMERICA,<br><br>     Defendant. | Case No. 1:19-cv-01441-AWI-SAB<br><br>ORDER FOLLOWING MAY 18, 2022 STATUS CONFERENCE<br><br>(ECF Nos. 71, 72, 73, 74, 75) |

Currently before the Court is Plaintiff James Preimesberger's ("Plaintiff") "Brief in Support of Discovery Needed to Respond to Defendant's Motion for Summary Judgment" (ECF No. 71 (capitalizations altered)), which this Court construes as a motion requesting further scheduling conference pursuant to Federal Rule of Civil Procedure ("Rule") 16. Defendant filed a response to Plaintiff's brief on May 6, 2022. (ECF No. 74.) On May 18, 2022, the parties appeared before the Court on the matter. (ECF No. 75.) Counsel Emyln Mandel and Fredrick Crombie appeared by videoconference for Plaintiff. Counsel Charles Duffy appeared by videoconference for Defendant United States of America. Having considered the moving papers, the declarations and exhibits attached thereto, supplemental briefing, and representations at the May 18, 2022 hearing, as well as the Court's file, and for the reasons explained herein, the Court shall grant Plaintiff's motion requesting further scheduling conference pursuant to Rule 16 and issue a scheduling order setting the discovery and dispositive motion deadlines.

# I.

## BACKGROUND

The Court shall briefly summarize the background of this action to the extent it is relevant to the instant dispute and this Court's order.

### A.    Allegations

This is a tax refund case.  Plaintiff alleges at all relevant times, non-party Meridian Health Services Holdings, Inc. ("Meridian") owned and operated five skilled nursing home facilities in California.  Plaintiff owned less than 10% of Meridian's stock and was employed by each of the facilities to operate their skilled nursing activities.  Plaintiff alleges the majority of each facility's revenues were derived from Medicare and/or Medi-Cal patients.  Accordingly, each facility's cashflow was dependent on timely reimbursement payments from Medicare and Medi-Cal.  Between 2010 and 2015, the facilities experienced serious cashflow problems, primarily due to delays and disruptions in Medicare and Medi-Cal reimbursement payments.  The facilities accrued substantial Medicare and Medi-Cal receivables due from the United States, but in the meantime, the facilities could not meet all of their operational expenses.

Initially, Plaintiff caused Meridian to bridge each facility's cashflow gap by drawing on a line of credit from Capital Finance, Inc. ("CFI").  Each time Meridian drew on the line of credit, it was required to provide CFI with the nature and amount of each facility's obligations for which funds were requested.  Meridian requested funds be used to pay all of the wages of the facilities' employees (i.e., net wages and withholding taxes), but CFI only authorized and provided funds for the payment of the employees' net wages.  As a result, Plaintiff claims the facilities were unable to pay all or a portion of their withholding tax obligations.

Plaintiff claims the nursing home facilities could not simply cease operations due to lack of funding, because certain state and federal regulations require a lengthy and detailed procedure for closure; further, Plaintiff alleges that in the interim, the nursing home facilities were legally required to remain open and maintain the existing standard of care for all residents.  As a result, Plaintiff claims he prioritized payment of available funds for rent, utilities, and employee wages. Plaintiff claims it was not possible to both pay the withholding tax obligations and maintain the

1    required standard of care.  Consequently, Plaintiff negotiated the sale of the facilities to the
2    Providence Health Group ("Providence").  Plaintiff alleges Providence agreed to close the sale
3    no later than November 1, 2014 and to satisfy each facility's outstanding withholding tax
4    liability through Medicare and Medi-Cal receivables.  However, the sale did not close until
5    March 1, 2015, and Providence did not pay the outstanding withholding tax liabilities.

6         Thereafter, the IRS assessed Plaintiff with penalties regarding each of the facilities'
7    unpaid withholding tax liabilities for the tax periods ending June 30, 2014, September 30, 2014,
8    December 31, 2014, March 31, 2015, and June 30, 2015, pursuant to 26 U.S.C. § 6672.[1]
9    Plaintiff alleges the total amount assessed against him is not less than $2.4 million.

10        On April 10, 2019, Plaintiff made a series of payments towards the assessments against
11   him, totaling $6,601.41.  However, Plaintiff believes the IRS has collected additional amounts
12   from him through other means to satisfy the assessments.  That same day, Plaintiff requested a
13   refund from the IRS for the amounts he had paid pursuant to the § 6672 assessment.

14   **B.    Procedural Posture**

15        Plaintiff initiated this tax refund case on October 14, 2019.  (ECF No. 1.)  Specifically,
16   Plaintiff seeks to recover the $6,601.41 that he alleges was improperly assessed against him
17   through the Internal Revenue Service's ("IRS") invocation of § 6672.

18        An initial scheduling conference was set in this matter for January 10, 2020.  (ECF No.
19   3.)  However, the conference was continued to permit resolution of Defendant's motion to
20   dismiss pursuant to Rule 12(b)(6), filed on February 18, 2020.  (See ECF Nos. 6, 7, 8, 16.)  On
21   August 5, 2020, the Court partially granted Defendant's motion to dismiss.[2]  (ECF No. 17.)

---

22   [1] Employers are required to withhold social security and individual taxes from an employee's wages and pay the
23   withheld taxes on a quarterly basis, even though withholdings occur each pay period.  The employer holds the
     withheld taxes in trust for the United States and the taxes are known as "trust fund taxes."  Once an employee
24   receives net pay, the employee is credited with the tax payments, irrespective of whether the employer actually pays
     the trust fund taxes to the IRS.  To prevent employer abuses of this system, § 6672 permits the IRS to assess "trust
25   fund tax penalties" against a responsible person for an amount up to the delinquent trust fund taxes.  Section 6672 is
     a penalty that creates an obligation "separate and distinct from the underlying tax obligation."  Imposing liability
26   under § 6672 requires a showing that (1) the party was a "responsible person" required to collect, truthfully account
     for, and pay over the tax; and (2) the party "willfully" failed to pay the tax.  See 26 U.S.C. § 6672.

27   [2] Defendant moved to dismiss on the basis that the complaint only challenged the "willfulness" prong of § 6672, and
28   Plaintiff failed to allege facts sufficient to establish his conduct was not "willful" within the context of § 6672.
     More specifically, Defendant noted the Ninth Circuit rejects arguments that have the effect of a taxpayer

On September 9, 2020, Defendant answered the complaint.  (ECF No. 21.)   On September 14, 2020, Defendant filed a motion for judgment on the pleadings pursuant to Rule 12(c).  (ECF No. 22.)  The Court again continued the scheduling conference, this time to permit resolution of the pending motion for judgment on the pleadings.  (ECF Nos. 32, 33.)  On May 26, 2021, the Court denied Defendant's motion for judgment on the pleadings.[3]  (ECF No. 34.)

On July 26, 2021, the parties filed a joint scheduling report (ECF No. 38) and Plaintiff separately filed multiple exhibits relating to the scheduling report (ECF Nos. 38, 39, 40, 41, 42, 43, 44).  In their report and at the July 30, 2021 scheduling conference, the parties submitted that Plaintiff intended to seek leave to file an amended complaint to assert he was not a "responsible person" for all or part of the time period of March 1, 2015, through June 30, 2015, and that he is entitled to a refund of all or certain trust fund tax penalty assessments made between March 1, 2015, and June 30, 2015.  (See ECF Nos. 38, 45.)  The parties indicated they would exchange initial disclosures but requested the Court not schedule discovery cut-off dates until after the pleadings were settled, including Plaintiff's proposed amended complaint and Defendant's anticipated counterclaim.  In light of these representations, the Court issued a partial scheduling

---

"preferring" other creditors over the United States, and argued Plaintiff alleged he "preferred" utility companies, employees, and landlords over the United States, and therefore his payment to those creditors while not paying the withheld taxes was "willful."   In partially granting Defendant's motion, the Court found a failure to use "encumbered funds" to pay trust fund taxes does not amount to "willfulness" under § 6672, but that funds are only "encumbered . . . where the taxpayer is legally obligated to use the funds for a purpose other than satisfying the preexisting employment tax liability and if that legal obligation is superior to the interest of the IRS in the funds," and the burden of proof is on Plaintiff.  (ECF No. 17 at 7 (citing Nakano v. U.S., 742 F.3d 1208, 1211 (9th Cir. 2014).)  The Court found it lacked jurisdiction over Plaintiff's equitable estoppel (based on the tardy Medicare payments) and recoupment/set off arguments (based on Providence's duty to pay the trust fund taxes) and dismissed Plaintiff's claims arising out of those theories.  (Id. at 13, 14.)  However, the Court declined to dismiss Plaintiff's theory that he did not act willfully because he was attempting to comply with federal and state regulations, on the basis that the determination of whether circumstances and factors rendered Plaintiff's conduct "non-willful" was a factual question that precluded dismissal pursuant to Rule 12(b)(6).

[3] Defendant's motion largely restated the argument made in its previous motion to dismiss; namely, that Plaintiff's actions were "willful" because he voluntarily acted to "prefer" other creditors to the United States with respect to withholding taxes.  In denying the motion, the Court again noted "willfulness" under § 6672 is "a voluntary, conscious and intentional act to prefer other creditors over the United States," that is generally a question of fact.  (ECF No. 34 at 6, 12.)  Further, the Court found the complaint survived judgment on the pleadings where Plaintiff alleged nonpayment of taxes was necessary because the facilities suffered from a cashflow situation, could not immediately close due to being nursing homes, and Plaintiff was required to use all available funds to meet the applicable standard of care and the physical, psychological, and nutritional needs of the facilities' residents, pursuant to federally-mandated care obligations; in short, the Court found the face of the pleadings did not show "willfulness" as a matter of law.  (Id. at 14–15.)

4

1    order, setting deadlines for the filing of amended pleadings (December 17, 2021) and the

2    exchange of initial discovery (January 28, 2022), and setting a further status conference for

3    March 1, 2022, to address the need for further scheduling.  (ECF No. 46.)

4           On December 17, 2021, Plaintiff filed his first amended complaint and Defendant filed its

5    counterclaim against Plaintiff.  (ECF Nos. 47, 48, 49, 50.)  On January 18, 2022, Plaintiff filed

6    an answer to the counterclaim and Defendant filed an answer to the amended complaint and

7    amended counterclaim.[4]  (ECF Nos. 56, 57.)  On January 28, 2022, Plaintiff filed an answer to

8    the amended counterclaim.  (ECF No. 59.)

9           On February 23, 2022, after the parties failed to timely file a joint status report in advance

10   of the March 1, 2022 status conference, the Court issued an order to show cause and continued

11   the status conference to March 2, 2022.  (ECF Nos. 60, 63.)  Thereafter, the parties filed a joint

12   status report.  (ECF No. 61.)  The joint status report indicated Defendant anticipated filing a

13   motion for summary judgment and the parties disputed whether discovery should proceed in this

14   action on a normal basis, or if discovery should be stayed or limited to only that discovery

15   necessary for Plaintiff to respond to the forthcoming motion for summary judgment.

16          On February 28, 2022, Defendant filed a motion for summary judgment, which is

17   currently pending before the District Judge.  (ECF Nos. 65, 66, 67.)  The motion notes the

18   Court's prior rulings distilled the remaining arguments regarding the willfulness prong of § 6672

19   as presenting a choice for Plaintiff between two "competing federal obligations," i.e., whether to

20   (i) pay over the withheld payroll taxes owed by the nursing homes to the IRS as required by the

21   Internal Revenue Code, or (ii) maintain a standard of care for the home residents as required by

22   law.  (ECF No. 65-1 at 2 (citing ECF No. 34 at 11, 15).)  Like Defendant's prior motions

23   challenging the sufficiency of the pleadings, the main thrust of the motion for summary

24   judgment is that dismissal of all claims is appropriate because Plaintiff "willfully" preferred

25   other creditors to the United States.  Further noting that the Court's prior denial of its challenges

---

[4] The operative counterclaim seeks to reduce to judgment the IRS assessments made against Plaintiff under § 6672 for his failure to pay over $2.2 million of federal payroll taxes that were withheld from the wages of employees over the span of multiple tax quarters for seven nursing homes (including the five identified in Plaintiff's complaint) and for Foresight, which was identified as a real estate business.

to the pleadings was based on the finding that there are no allegations in the complaint that the facilities used CFI's funds to pay expenses that were not necessary to maintaining the standard for care, Defendant supports its arguments on summary judgment with evidence that Plaintiff did *not* use all available funds to "ensure a standard of care for the nursing home residents," but instead transferred at least $1.3 million from six of the nursing homes to Foresight — a real estate business over which Plaintiff was the managing partner during all relevant times — and that Foresight, in turn, paid nearly $900,000 directly to Plaintiff or for his personal benefit.[5] Defendant argues this evidence demonstrates that "the facilities used CFI's funds to pay expenses that were not necessary to maintaining the standard for care," therefore, Plaintiff's failure to pay over the taxes withheld from his employees was "willful" under § 6672.

On March 2, 2022, the parties appeared before the Court for the scheduling conference and presented their ongoing discovery dispute.  (ECF No. 69.)  Pursuant to the matters discussed at the conference, the Court issued an order setting a briefing schedule and directing Plaintiff to inform the Court of the facts and legal authorities in support of his position in favor of proceeding into full discovery despite the pending motion for summary judgment.  (ECF No. 68.)  The Court also set a further status conference for May 18, 2022, to be held after the filing of the parties' respective briefs.  Plaintiff was relieved of the obligation to file an opposition to the motion for summary judgment pending the Court's ruling on this discovery dispute.  On March 3, 2022, in light of this dispute and briefing schedule, the Court vacated the hearing date for the motion for summary judgment and issued an order to hold the motion for summary judgment in abeyance until the discovery dispute between the parties was resolved.  (ECF No. 70.)

Pursuant to this Court's briefing schedule, Plaintiff filed his brief in support of discovery needed to respond to Defendant's motion for summary judgment on April 6, 2022.  (ECF Nos. 71, 72, 73.)  In his briefing, Plaintiff maintains he intends to oppose the motion for summary judgment on the basis that he was not a "responsible person" under §6672, and he disputes

---

[5] As identified by Defendant, these payments included a salary of $86,895 Plaintiff paid to himself through Foresight, $4,000 paid to Plaintiff in May 2015, and over $802,452.09 paid by Foresight to satisfy Plaintiff's personal obligations and to pay legal fees and/or settle cases in which Plaintiff — but not Foresight — was a party. (ECF No. 65-1 at 6.)

1   Defendant's facts that he misused the health facilities' funds.  Plaintiff argues he requires further
2   information through discovery from CFI, as to what funds were provided through the credit line
3   and what payments CFI authorized; from Providence, as to evidence demonstrating Plaintiff was
4   not a "responsible person" after March 1, 2015; and from other third parties, such as the law
5   firms identified in Defendant's crossclaim.   Plaintiff further argues he needs to conduct
6   discovery from Defendant with respect to what payments the IRS has received from CFI,
7   Providence, and Medicare receivables that would offset the amounts assessed against Plaintiff.

8        Defendant filed its response on May 6, 2022.  (ECF No. 74.)  Defendant's position is
9   that, based on its previous motions and the Court's orders, the issues to be litigated have already
10  been substantially narrowed.  (See, e.g., ECF No. 17 at 13, 14 (rejecting and dismissing with
11  prejudice Plaintiff's claims arising out of theories of equitable estoppel (based on the tardy
12  Medicare payments) and recoupment/set off arguments (based on Providence's duty to pay the
13  trust fund taxes).)  Thus, Defendant maintains the discovery Plaintiff purports to need to oppose
14  the pending motion for summary judgment (e.g., information relating to Medicare payments
15  owed to the subject nursing homes by the Health and Human Services Agency and other federal
16  agencies) has nothing to do with the subject IRS assessments against Plaintiff and is irrelevant to
17  that motion.

18       On May 18, 2022, the parties appeared by videoconference, as detailed above, before the
19  Court for the scheduled status conference.  (ECF No. 75.)

20                                          **II.**

21                                  **LEGAL STANDARD**

22       Rule 26 allows a party to obtain discovery "regarding any nonprivileged matter that is
23  relevant to any party's claim or defense and proportional to the needs of the case, considering the
24  importance of the issues at stake in the action, the amount in controversy, the parties' relative
25  access to relevant information, the parties' resources, the importance of the discovery in
26  resolving the issues, and whether the burden or expense of the proposed discovery outweighs its
27  likely benefit."  Fed. R. Civ. P. 26(b)(1).  "Information within this scope of discovery need not
28  be admissible in evidence to be discoverable."  Fed. R. Civ. P. 26(b)(1).  "Evidence is relevant if:

1    (a) it has any tendency to make a fact more or less probable than it would be without the

2    evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. On

3    the other hand, Rule 26(c) provides "[t]he court may, for good cause, issue an order to protect a

4    party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed.

5    R. Civ. P. 26(c)(1).

6        Generally, a court is required to issue a scheduling order addressing the completion of

7    discovery after receiving the parties' Rule 26(f) report. Fed. R. Civ. P. 16(b). More specifically,

8    Rule 16(b)(2) provides that the Court "must issue the scheduling order as soon as practicable, but

9    unless the judge finds good cause for delay, the just must issue it within the earlier of 90 days

10   after any defendant has been served with the complaint or 60 days after any defendant has

11   appeared."

12                                 **III.**

13                            **DISCUSSION**

14        This matter came on before the Court for a further status conference, as set by the Court's

15   July 30, 2021 order. (ECF No. 46.) The only two deadlines previously set by the Court have

16   been completed: the parties have filed amended pleadings, and the parties confirmed initial

17   disclosures were completed prior to the January 28, 2022 deadline. No other pretrial or trial

18   dates have been set in this matter. Plaintiff propounded discovery requests on Defendant on

19   February 25, 2022, for which, in light of the dispositive motion currently pending before the

20   District Judge, Defendant did not provide responses. Plaintiff has not filed any motion to compel

21   discovery, and Defendant has not filed any motion for a protective order.

22        In light of this procedural posture and aforementioned authorities, the Court construes

23   Plaintiff's motion requesting discovery to respond to Defendant's pending motion for summary

24   judgment as a request for further scheduling order pursuant to Rule 16(b).

25        At the status conference, Plaintiff argued that material disputed facts exist — with respect

26   to contentions in the motion for summary judgment and the general theories of this case. For

27   example, Plaintiff asserted he needed to conduct discovery related to the funds identified by

28   Defendant in its motion for summary judgment, and determine whether such funds were used for

1   the facilities, as discussed in Defendant's motion.  Plaintiff proffers further discovery is therefore
2   necessary because he intends to address the issues related to Defendant's identified funds in his
3   opposition to the summary judgment motion.

4          In opposition, Defendant argued Plaintiff should not be permitted to proceed with further
5   discovery until after adjudication on the pending motion for summary judgment.  This argument
6   is based on the contention that the motion for summary judgment only addresses issues
7   supported by basic undisputed facts and evidence.  Defendant further argues none of the theories
8   in the summary judgment motion are reached by the discovery Plaintiff appears to contemplate.
9   Thus, Defendant argued it would be a waste of the parties' and the Court's resources to require
10  this discovery to be completed before adjudication of and likely further narrowing of the issues
11  by the summary judgment motion.

12         The Court finds further discovery may be necessary in this matter before adjudication of
13  the motion for summary judgment.  As detailed in the procedural posture set forth above, the
14  Court has, on a number of occasions in denying Defendant's prior dispositive motions, noted that
15  the issue of whether Plaintiff acted "willfully" for purposes of § 6672 is generally a factual
16  matter.  Defendant submits significant financial evidence in support of its claims that Plaintiff
17  did not use all available funds to "maintain the standard of care" required by federal and state
18  law at the nursing home facilities, as alleged, but that instead he transferred substantial cash
19  amounts out of the nursing home facilities in order to pay himself a salary, settle personal legal
20  fees, and other personal matters that belie Plaintiff's proffer that his failure to pay the withheld
21  taxes was not "willful."  Plaintiff proffers he disputes Defendant's facts and evidence and needs
22  to conduct further discovery — especially into the financials — in order to appropriately prepare
23  his opposition to the pending motion for summary judgment.

24         At this juncture, the Court again notes that the motion for summary judgment is pending
25  before the District Judge; this Court does not sit as the adjudicator on the merits of Defendant's
26  dispositive motion.  Rather, this Court only conducts "a preliminary review of the pending
27  dispositive motion."  Based on its preliminary review and the representations of the parties, the
28  Court finds there potentially seem to be issues or questions of fact and declines to prejudge the

1  motion before discovery is permitted.  See also Alaska Cargo Transp., Inc. v. Alaska R.R., Corp.,

2  5 F.3d 378, 383 (9th Cir. 1993) (a district court abuses its discretion if it prevents a party from

3  conducting discovery relevant to a potentially dispositive motion).

4       While the Court is not unsympathetic to Defendant's concerns that permitting further

5  discovery at this time will result in Plaintiff seeking information irrelevant to the instant motion

6  — such as Plaintiff's arguments about Medicare and Medi-Cal payments — the interests of

7  justice and the adversary system require that Plaintiff have an opportunity to obtain information

8  from Defendant to determine whether the asserted claims and defenses are viable.  Furthermore,

9  the Court notes that a number of options are at Defendant's disposal which may alleviate its

10  concerns, including but not limited to: meeting and conferring with counsel to narrow the issues

11  for discovery, stipulating to a further timeline for conducting discovery on such issues,

12  proceeding through the informal discovery process afforded by this Court with respect to any

13  disputed issues, and/or filing discovery motions, such as motions to compel or motions for

14  protective orders.

15       Accordingly, the Court shall convert the instant matter to a Rule 16 status conference and

16  set applicable deadlines.  As the parties have agreed that nine months is a sufficient time to

17  complete the anticipated discovery — which includes depositions throughout the country — and

18  expert discovery is not necessary at this time, the Court shall set deadlines only for non-expert

19  discovery and dispositive motions.

20                                                    **IV.**

21                                  **CONCLUSION AND ORDER**

22       Based on the foregoing, IT IS HEREBY ORDERED that:

23  1.     To the extent Plaintiff's briefing (ECF No. 71) is construed as a motion requesting

24         further scheduling conference pursuant to Federal Rule of Civil Procedure 16,

25         Plaintiff's motion is GRANTED.  This matter is converted to a scheduling

26         conference pursuant to Federal Rule of Civil Procedure 16 and the Court sets the

27         following deadlines:

28         a.     Non-expert discovery deadline: **February 25, 2023**;

b.      Dispositive motion deadline: **March 27, 2023**;

2.     If any discovery disputes arise during this time, the parties may elect to pursue any remedies provided under the Local Rules and Federal Rules, and may also proceed through this Court's informal discovery process as set forth on the Court's website, by contacting the Courtroom Deputy to request an informal discovery conference;

3.     Defendant's motion for summary judgment (ECF No. 65) shall be deemed filed as of the dispositive motion deadline. Any supplemental briefing by the parties must therefore be filed prior to that deadline;

4.     If Defendant's motion for summary judgment is denied, the Court shall set additional pretrial dates; and

5.     Defendant has **thirty (30) days** from issuance of this order to respond to Plaintiff's discovery requests, propounded on February 25, 2022.

IT IS SO ORDERED.

Dated:   **May 18, 2022**

UNITED STATES MAGISTRATE JUDGE